**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

GERALD ROSANO, et al.,

       Plaintiffs,

v.

TOWNSHIP OF TENECK,

       Defendant.

Civ. No. 09-6339 (KSH) (PS)

**<u>OPINION</u>**

**<u>Katharine S. Hayden, U.S.D.J.</u>**

### I.  Introduction

This matter is before the Court on cross-motions for summary judgment brought by defendant, Township of Teaneck, and by plaintiffs, 88 Teaneck police officers.  (D.E. 31, 32.) Plaintiffs allege that Teaneck has violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, by failing to pay proper overtime, by failing to provide compensation for time spent attending daily roll calls, and by failing to provide compensation for time spent donning and doffing uniforms and equipment each day.  For the reasons that follow, plaintiffs' motion is denied and summary judgment is granted in favor of Teaneck.

### II.  Facts and Procedural History

#### A.  Factual Background[1]

The plaintiffs are 88 current and retired Teaneck police officers.  (Final Pretrial Order ("FPTO") § 3 ¶ 1.)  For collective bargaining purposes, the Teaneck Policemen's Benevolent

---

[1] Because the parties' statements of undisputed facts rely overwhelmingly on the stipulated facts included in the Final Pretrial Order (D.E. 29), the Court will refer to the stipulated facts rather than the statements of material facts.

Association, Local 215, represents Teaneck police officers and the Superior Officers Association represents Teaneck sergeants, lieutenants, and captains.  (*Id.* ¶¶ 104, 119.)  The two unions have always negotiated jointly with Teaneck, represented by the same attorney.  (*Id.* ¶¶ 121, 127.)  The present dispute has its origins in a Collective Negotiations Agreement ("Agreement") that was in effect for an original term of January 1, 2004 to December 31, 2007 (*id.* ¶ 132), and which remained in effect through June 2011 due to an impasse in negotiations (*id.* ¶ 144).

The Agreement provides that the plaintiffs "work established and regularly recurring work periods of either [seven] or [nine] days."  (*Id.* ¶ 156.)  These periods combine so that plaintiffs are required to work an average of 39.25 hours per week over the course of a calendar year.  (*Id.* ¶¶ 158, 160.)  Plaintiffs on a nine-day cycle work six eight-hour tours over six consecutive days and then have three days off, while plaintiffs on a seven-day cycle work five eight-hour tours over five consecutive days and then have two days off.  (*Id.* ¶¶ 159, 166.)  When plaintiffs perform work "in excess of the normal hours in any tour of duty," that work is considered overtime for which plaintiffs are entitled to be paid "at a time and one-half rate."  (*Id.* ¶ 254.)  Overtime pay is not distributed on a minute-by-minute basis; rather, it accrues in blocks based on the amount of time worked after a regular tour.  (*See id.*)  If a plaintiff works less than 31 minutes past his scheduled tour, he receives no overtime; if he works between 31 minutes and 44 minutes past his scheduled tour, he receives 30 minutes in overtime; if he works between 45 and 52 minutes past his scheduled tour, he receives 45 minutes overtime; and if he works between 53 and 59 minutes past his scheduled tour, he receives one hour of overtime.  (*Id.*)  Additional overtime beyond one hour accrues in blocks of 15 minutes.  (*Id.*)  The effect of this system is to set a floor so that an employee does not collect overtime unless he works at least 31

minutes past his scheduled tour; once passing that threshold, however, the employee will collect overtime pay for time including the otherwise-omitted first half-hour.

Plaintiffs do not punch a clock for their normal tours.  (*Id.* ¶ 199.)  Instead, a tour commander writes each plaintiff's scheduled hours on the daily blotter that also includes information such as overtime, sick time, vacation days or time due, and shift exchanges.  (*Id.* ¶¶ 199–200.)

Plaintiffs must report for inspection and roll call ten minutes prior to the start of their tours, and they are dismissed only after a ten-minute roll call at the end of their tours.  (*Id.* ¶ 191.)  This is known as "muster time."  Different divisions of the department use the time for different specific purposes, but it is generally used to exchange information, distribute assignments, complete paperwork, and otherwise prepare for the change in shifts.  (*See id.* ¶ 198.)  The effect of muster time is that for each eight-hour tour, plaintiffs are required to work for eight hours and twenty minutes.  (*Id.* ¶ 209.)  In actuality, however, the post-tour muster period may last less than the full ten minutes, and the Tour Commander "will take [plaintiffs] off the Daily Blotter as if they had worked the full eight hour and twenty minute day."  (*Id.* ¶ 210.)

Plaintiffs are subject to very specific uniform requirements.  (*See id.* ¶ 298) (citing "The Uniform, Dress and Grooming Standards, GO-92-006").  In addition to general mandates of neatness and professional appearance (*id.* ¶ 299), plaintiffs assigned to the "Uniform Division" are subject to standards and specifications with regard to: "uniform hat; uniform jacket; shirts; pants; dress blouse; leather gear; shoes/boots; socks; tie; nameplate; medals, awards, etc.; winter uniform; summer uniform; sweaters; gloves; rainwear; nightstick; handcuffs; and flashlight." (*Id.* ¶ 302.)  Plaintiffs assigned to the "Non-Uniform Division" must have a conforming uniform available at all times and are subject to strict requirements for their business garb.  (*Id.* ¶ 305; *see*

*also id.* ¶ 306 (similar modified dress code for "Services Division").)   Plaintiffs wearing uniforms must carry "the following equipment: Shield and Department I.D. card; notebook and pen; firearm and ammunition . . . ; whistle; handcuffs; working flashlight; baton; bullet resistant vest; watch; pepper spray (when issued); and any other items 'necessary for the performance of an officer's assigned duties.'"  (*Id.* ¶ 309.)  Officers wearing civilian clothes must carry the same equipment minus the whistle, flashlight, and baton.  (*Id.* ¶ 310.)  In each instance, the equipment may be carried in assigned vehicles or on the plaintiff's person, as "the situation, regulations, or supervisor may dictate."  (*Id.* ¶¶ 309–10.)

Plaintiffs are not required to put on or take off (donning/doffing) their uniforms at the workplace.  (*Id.* ¶¶ 333–34.)  Some officers change into their uniforms at home (*id.* ¶ 338), but, most choose to change at work in locker rooms or in their offices, citing concerns about theft or loss of uniforms/equipment at home; the possibility of a family member gaining access to gear; distractions at home that might interfere with dressing; safety concerns regarding firearm checks at home; discomfort while commuting; the risk of being identified as a police officer while off-duty; and potential exposure of family members to contaminants and bodily fluids.  (*Id.* ¶¶ 335, 340.)

The Agreement is silent as to whether plaintiffs are entitled to compensation for time spent changing into their uniforms.  (*Id.* ¶ 344.)  During collective bargaining negotiations, plaintiffs never raised the issue of, or filed a grievance based on, compensation for donning and doffing time.  (*Id.* ¶¶ 345–48.)

### B.  Procedural History

On December 16, 2009, plaintiffs filed a complaint against Teaneck under the Fair Labor Standards Act ("FLSA") seeking compensation for: (I) overtime; (II) time spent attending two

daily roll calls; and (III) time spent donning and doffing uniforms and equipment each day. (D.E. 1.)  That complaint also included the Teaneck Policemen's Benevolent Association, Local 215 as a plaintiff.  (*Id.*)  On June 9, 2010, the plaintiffs filed an amended complaint that omitted the union and left only the individual officers as plaintiffs.  (D.E. 10.)  Although the plaintiffs are numerous and filed notices of consent to suit, they never sought conditional certification, *see Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 192–94 (3d Cir. 2011), and are proceeding in this action as 88 individual plaintiffs rather than as a collective class.

Teaneck filed a motion to dismiss (D.E. 11), but the motion was terminated when the Court stayed the case and directed the parties to mediation.  (D.E. 15.)

Following an unsuccessful mediation, on February 2, 2012, the parties attended a pretrial conference before Magistrate Judge Patty Shwartz for the purpose of preparing the Final Pretrial Order.  (*See generally* Transcript of Pretrial Conference, D.E. 30 ("Tr.").)  At that conference, Judge Shwartz noted that Teaneck planned to present a motion *in limine* under Federal Rule of Civil Procedure 37(c)(1) to bar plaintiffs, from using any damages calculations that were not disclosed during discovery.  (Tr. 4:21–5:5.)  Teaneck's counsel represented the plaintiffs' only Rule 26 disclosure computing damages was predicated on an overtime threshold of eight hours per day, rather than 40 hours per week.  (*Id.* 5:6–13.)  This distinction is significant because the FLSA defines overtime entitlement by work period, not by work day.  *See, e.g.*, 29 U.S.C. § 207(a)(1) ("no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for [the excess hours] . . .").

Indeed, the only damages calculation disclosed by plaintiffs during discovery was a spreadsheet prepared by Zorica Alcott, the wife of one of the plaintiffs, which purports to calculate additional overtime hours worked based on an eight-hour day.  (FPTO § 3 ¶ 362.)  To

5

prepare her damages calculation, Alcott used daily blotters and assumed that for each tour, a plaintiff worked eight hours, plus 20 minutes in muster time, plus 30 minutes daily donning and doffing for uniformed officers and 15 minutes daily donning and doffing for non-uniformed officers. (*Id.*) Thus, for each tour worked, Alcott estimated .83 hours unpaid for uniformed officers and .58 hours unpaid for non-uniformed officers. (*Id.*) The record provides no further damages calculations. *See id.* ¶ 351 ("Not a single Plaintiff was able to provide an estimate of his or her Uncompensated Overtime Damages or time worked for which they believe they were not compensated."); *see also* ¶ 352. At the pretrial conference, plaintiffs' counsel explained that Alcott's calculations were based on eight hours per day because "the contract requires overtime payment based on an [eight-hour] day, not a 40-hour week, which our claim — that's what our claim essentially would be under [29 U.S.C. §] 207(a)." (Tr. 5:24–6:3.) Plaintiffs' counsel conceded that they did not produce anything in discovery that would provide a computation of damages under a 40-hour theory. (*Id.* 8:24–9:14, 10:9–19.) After taking arguments, Judge Shwartz determined that she "had heard no reason why there should be any permission to go beyond that which was disclosed in discovery. And to permit anything further would change the whole damage calculation in this case to something that was never the basis upon which any of the damages that were being calculated." (*Id.* 48:1–6.) She therefore "limit[ed] the plaintiff[s] to the calculations that they produced during the course of discovery." (*Id.* 45:15–19.)

After the FPTO was filed, plaintiffs and Teaneck filed these motions for summary judgment. (D.E. 31, 32.) Each party then filed opposition and reply briefs. (D.E. 33, 34, 35, 36.)

### III. Summary Judgment Standard

Summary judgment may only be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In determining the existence of a genuine dispute as to a material fact, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  Rather, the fact in dispute must be genuine, meaning that a reasonable factfinder could find the fact in favor of the nonmoving party, and it must be material, meaning that it "might affect the outcome of the suit under the governing law." *Id.* at 248.

Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against [the] party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  Inferences drawn from the facts in the record "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

### IV. Discussion and Analysis

Teaneck's motion for summary judgment presents three points: (1) that plaintiffs "have no evidence they worked time for which they were not properly compensated in accordance with the requirements of the FLSA" (Teaneck Moving Br. 8–11); (2) that plaintiffs' overtime claim "is not predicated upon an FLSA-mandated overtime threshold" (*id.* at 11–17); and (3) that plaintiffs' donning and doffing claims fail to state a claim under the FLSA because plaintiffs are

7

not entitled to be compensated for time spent donning and doffing (*id.* at 18–27). Plaintiffs' motion for summary judgment presents three points: (1) that Teaneck violated the FLSA by failing to compensate plaintiffs for work performed following the end of their tours (Plaintiffs' Moving Br. 14–23); (2) that Teaneck violated the FLSA by failing to compensate plaintiffs for muster time (*id.* at 23–30); and (3) that donning and doffing is compensable time under the FLSA (*id.* at 31–36).

Because the motions have substantial overlap, the Court will first address the burden of proof that applies to each count and will then address each count in the order that it appears in the complaint.

### A. Burden of Proof

When an employee brings a FLSA claim, he ordinarily "has the burden of proving that he performed work for which he was not properly compensated." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87 (1946);[2] *see also Sniscak v. Borough of Raritan*, 86 F. App'x 486, 487 (3d Cir. 2003). The FLSA also requires employers to maintain records of "wages, hours and other conditions and practices of employment." *Mt. Clemens*, 328 U.S. at 687 (citing 29 U.S.C. § 211(c)). An employee is most likely to discharge his burden of proof in an FLSA claim through use of the employer's records; therefore, "where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes a more difficult problem arises." *Id.*

To solve this problem, the Supreme Court has held that rather than punishing the employee by denying recovery for failure to prove damages in the event employer records are

---

[2] *Superseded by statute, Portal-to-Portal Act of 1947, as recognized in IBP, Inc. v. Alvarez,* 546 U.S. 21, 25-26 (2005); *See discussion infra. at Section IV(D)(1).*

inaccurate or inadequate, "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.*; *see also Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1297 (3d Cir. 1991). An employee's sworn testimony may be enough to satisfy this standard. *See Chen v. Century Buffet & Rest.*, No. 09-1687, 2012 WL 113539, at *7 (D.N.J. Jan. 12, 2012) (Chesler, J.) (citing *Mt. Clemens*, 328 U.S. at 687; *Reich v. Gateway Press, Inc.*, 13 F.3d 685, 702 (3d Cir. 1994)). If the employee satisfies this burden, the employer must then "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Mt. Clemens*, 328 U.S. at 687–88; *Martin*, 949 F.2d at 1297. If the employer cannot rebut the employee's proffered inference, "the court may then award damages to the employee, even though the result be only approximate." *Mt. Clemens*, 328 U.S. at 688; *Martin*, 949 F.2d at 1297.

When determining whether this burden-shifting mechanism applies, it does not matter if the employer's failure to maintain records "grows out of a bona fide mistake as to whether certain activities or non-activities constitute work," because "the employer, having received the benefits of such work, cannot object to the payment for the work on the most accurate basis under the circumstances." *Mt. Clemens*, 328 U.S. at 688.

**B. Count One: Overtime**

The first count of plaintiffs' amended complaint asserts that Teaneck has failed to pay overtime in accordance with the FLSA. (Am. Compl. ¶¶ 40-47.)

**1. Overtime Threshold**

The FLSA provides that an employee is entitled to overtime pay of at least one and one-half times his or her regular rate of pay for each hour worked in excess of 40 hours over the course of a workweek. 29 U.S.C. § 207(a)(1). In certain circumstances, exceptions are made to the 40-hour threshold. One such exception is designed to accommodate jobs that fall outside the confines of an ordinary workweek. *McGrath v. City of Phila.*, 864 F. Supp. 466, 474 (E.D. Pa. 1994) (citing *Wethington v. City of Montgomery*, 935 F.2d 222, 224 (11th Cir. 1991)). The parties dispute whether such an exception exists here. Teaneck contends that it established a modified overtime threshold beyond the typical 40-hour threshold in accordance with 29 U.S.C. §207(k), while plaintiffs argue they did not.

Section 207(k) of the FLSA provides that a public agency engaged in law enforcement activities does not violate overtime requirements

> if . . . in the case of such an employee to whom a work period of at least 7 but less than 28 days applies, in his work period the employee receives for tours of duty which in the aggregate exceed a number of hours which bears the same ratio to the number of consecutive days in his work period as 216 hours . . . bears to 28 days.

Thus, if this exception applies, the plaintiffs on a nine-day cycle have an overtime threshold of 55 hours and the plaintiffs on a seven-day cycle have an overtime threshold of 43 hours. *See* 29 C.F.R. § 553.230(c) (table providing calculation of ratios).

To avail itself of this exception, Teaneck must bear the "burden of proving, by a preponderance of the evidence, that it adopted a 7(k) work period." *McGrath*, 864 F. Supp. at 474 (citing *Lamon v. City of Shawnee, Kan.*, 972 F.2d 1145, 1153–54 (10th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993)); *see also Falzo v. Cnty. of Essex*, No. 03-1922, 2008 WL 2064811, at *7 (D.N.J. May 14, 2008) (Linares, J.). The FLSA's interpretive regulations define the term "work period" as "any established and regularly recurring period of work which, under the terms of the Act and legislative history, cannot be less than 7 consecutive days nor more than 28 consecutive days." 29 C.F.R. § 553.224(a). *Accord Falzo*, 2008 WL 2064811, at *7; *McGrath*, 864 F. Supp. at 474. Therefore, the inquiry into whether an employer truly utilizes a § 207(k) period consists of a two-step process: (1) the employer must prove that it has "established" a 7(k) work period, and (2) it must prove that such period is "regularly recurring." *McGrath*, 864 F. Supp. at 474; *see also Falzo*, 2008 WL 2064811, at *7. An employer may demonstrate that it established such a period "either by making a 'public declaration of [an] intent to adopt a work period of between 7 and 28 days' or, without such a declaration, by requiring 'its employees [to] actually work a regularly recurring cycle of between 7 and 28 days." *Falzo*, 2008 WL 2064811, at *7 (citing *McGrath*, 864 F. Supp. at 476); *see also Calvao v. Town of Framingham*, 599 F.3d 10, 16–17 (1st Cir. 2010) (holding that § 207(k) does not require employer to give notice to affected employees that it has adopted § 207(k) period, nor does it require public declaration).

Here, the record indicates that Teaneck established a valid § 207(k) work period. The Agreement explicitly provides that plaintiffs work either a seven-day or a nine-day period, each within the statutorily defined parameters of a work week. (FPTO § 3 ¶¶ 159, 166.) There is no indication that the terms of the Agreement did not reflect the way that the police department actually operated.

11

Plaintiffs analogize the present case to *Ackley v. Dep't of Corrections*, 844 F. Supp. 680 (D. Kan. 1994), but the difference is that there, the defendant had absolutely no evidence that it defined a work period as 28 days. *See id.* at 687. By contrast, here, Teaneck can point to the Agreement and its predecessors as providing for such a work period. Plaintiffs also cite to deposition testimony from the Chief of Police and the Township Manager in which they both indicated that they were unaware of the legal concept of the § 207(k) exemption. (Pls.' Moving Br. 22.) The inquiry into whether an employer has established the pertinent period, however, does not ask about the employer's subjective intent. Rather, it probes into the actual circumstances of an employee's work day. *See Calvao*, 599 F.3d at 16–17.

Plaintiffs are law enforcement officers who work either a seven-day or a nine-day cycle on a regularly recurring basis. The § 207(k) exemption's applicability here is perfectly consistent with its overall purpose. Congress created the exemption to accommodate common practices in which law enforcement employees must work on unconventional work schedules and therefore do not fit neatly within the conventional 40-hour work week that typically applies. Accordingly, the exemption under section 207(k) applies and the overtime thresholds are 55 hours for the plaintiffs on a nine-day cycle and 43 hours for the plaintiffs on a seven-day cycle. 29 C.F.R. § 553.230(c).

## 2. Evidence of Overtime

Teaneck argues that plaintiffs failed to produce sufficient evidence of missed overtime pay to survive summary judgment. As discussed above, although this case involves 88 plaintiffs with identical claims, it is not a collective action and each of the plaintiffs must individually carry his/her burden of proof. The evidence of damages consists solely of the Alcott spreadsheet, which operates under the assumption that overtime accrues for any time worked

beyond a plaintiff's eight-hour tour.[3]  The spreadsheet essentially took data on the number of times that each plaintiff worked and whether each plaintiff wore a uniform or civilian clothes on that particular day, and then estimated the amount of muster time and donning and doffing time. (*See* FPTO § 3 ¶ 362.)  This methodology does not provide a basis for discerning whether the plaintiffs satisfied the necessary threshold for overtime under the FLSA.  It provides an estimation of extra work performed with each tour, but it does not necessarily make clear whether each plaintiff worked the entirety of his/her tour or how that tour fit into each plaintiff's broader work period.  Further, as discussed above, the only damages calculation that plaintiffs provided in discovery came through the Alcott spreadsheet and plaintiffs were barred from asserting any alternative calculations.  (*See* Tr. 45:15–19.)  Because the FLSA defines overtime entitlement by work period, not by work day, plaintiffs have not carried their burden of demonstrating overtime damages, and Teaneck's motion for summary judgment is granted as to Count I, plaintiffs' claim for overtime.

### C.  Count Two: Muster Time

The second count of the complaint alleges that plaintiffs are not compensated for time at roll call ("muster time") in accordance with the FLSA.  *See generally* Am. Compl. ¶¶ 48-55. The parties do not dispute that muster time qualifies as compensable work.  (*See* Pls.' Moving Br. 28; Teaneck Opp. Br. 26–27.)  The parties disagree, however, about whether muster time is already compensated as part of plaintiffs' base salaries or whether it is time for which plaintiffs go entirely uncompensated.  (*Id.*)

---

[3] Neither plaintiffs nor Teaneck included the actual spreadsheet in the summary judgment record and instead rely on the FPTO's description of it.

### 1. Exhaustion of Administrative Remedies

Teaneck argues that because consideration of this count requires the Court to interpret the Agreement, it should be dismissed for failure to exhaust administrative remedies.  (Teaneck Opp. Br. 28-29.)  The Agreement provides a grievance procedure covering "any complaint, difference or dispute between the Township and any Employee with respect to the interpretation, application or violation of any of the provisions of this Agreement," and that procedure states that if the parties are unable to settle the dispute themselves, then "either party may refer the matter to the Public Employment Relations Commission" and "[a]n Arbitrator shall be selected pursuant to the rules of the Public Employment Relations Commission."  (Agreement, appended to Pls.' Opp. to Mot. Dismiss, Tapia Cert., Exh. A.[4])  The plain language of the grievance procedure, however, does not bar the Court from hearing the count for payment of muster time because that count is predicated on the FLSA, not on the Agreement itself.  Moreover, the grievance process would not allow plaintiffs to have their FLSA muster time claim heard in arbitration.  The Court, therefore, finds that plaintiffs need not exhaust any administrative remedies before proceeding with the present action.

### 2. Inclusion of Muster Time in Base Salary

Plaintiffs allege that the Agreement provides that officers are paid for an eight-hour tour of duty and, therefore, the muster time (20 minutes each day) is not subsumed within their base salaries.  (Pls.' Moving Br. 28-29.)  Contrary to plaintiffs' suggestion, and as discussed above,

---

[4] Neither party included a copy of the Agreement as part of the summary judgment record, instead relying upon extensive quotations from the Agreement contained within the FPTO. Because some pertinent parts of the Agreement's grievance procedure are not contained within the FPTO (*see* FPTO § 3 ¶ 154 (providing only preamble to grievance procedure)), the Court takes judicial notice of the Agreement itself, which plaintiffs appended to their opposition to Teaneck's earlier motion to dismiss.  *See* Fed. R. Evid. 201.

there is no automatic entitlement to overtime pay simply because muster time falls outside the confines of a normal eight-hour tour.  The FLSA defines overtime entitlement by work period, not by day.  *See, e.g.*, 29 U.S.C. § 207(a)(1); *Fernandez v. Centerplate/NBSE*, 441 F.3d 1006, 1008 (D.C. Cir. 2006) ("[T]he FLSA requires employers to pay overtime compensation for time worked in excess of forty hours per week," not "for payment of overtime compensation for work exceeding eight hours per day.").

The Agreement is pertinent to the analysis insofar as it explains which activities are included in an employee's base pay and which activities fall outside of base pay.  The Agreement provides that "the needs of the Township may require overtime work beyond the Employee's standard work schedule" and that "[a]ll authorized work performed in excess of the normal hours in any tour of duty shall be considered overtime."  (FPTO § 3 ¶ 254.)  The Agreement further provides that "[a] normal tour of duty shall be an eight (8) hour time division of the day for the purposes of assignment" and that "Employees will report for duty ten (10) minutes prior to the start of their tour . . . and Employees will be dismissed from duty ten (10) minutes after the end of their tour."  (*Id.* ¶ 191.)

A contract must be interpreted "according to its plain language" and by "reading the document as a whole in a fair and common sense manner."  *Travelers Indem. Co. v. Dammann & Co., Inc.*, 594 F.3d 238, 255 (3d Cir. 2010) (citations, quotation marks, and brackets omitted).  When construing a contract, courts must "endeavor to avoid ignoring certain words or reading the contract in such a way as to make any words 'meaningless.'"  *Id.* (citing *Cumberland Cnty. Improv. Auth. v. GSP Recycling Co., Inc.*, 358 N.J. Super. 484, 496 (App. Div. 2003)).

The Agreement sets forth certain obligations for plaintiffs to satisfy.  These obligations include their normal assignment duties and muster time.  The Agreement also provides that

overtime will be paid when a plaintiff works "in excess of the normal hours in any tour of duty." (FPTO § 3 ¶ 254.)  Taking the contract as a whole, the Court finds that muster time is part of the "normal hours in any tour of duty."  The plaintiffs are parties to a contract making muster time mandatory in connection with every tour served.  The only reasonable interpretation of this framework is that when negotiating a base salary, the unions and Teaneck bargained for base pay that compensated not only for the standard tour schedule, but with the concomitant obligation to attend muster time before and after the tour.  Because the plaintiffs are compensated for muster time as a component of their salaries, their argument that they have gone uncompensated in contravention to the FLSA fails, and Teaneck's motion for summary judgment as to Count II of plaintiffs' complaint is granted.

### D.  Count Three: Donning and Doffing

Both parties have moved for summary judgment on the plaintiffs' claim for compensation for the time spent donning and doffing their duty uniforms and equipment.  The parties agree that the plaintiffs have not been compensated for time spent donning and doffing.  They disagree, however, as to whether this time is actually compensable under the FLSA.

### 1.  Framework for Assessing Compensability

The FLSA requires employers to pay employees for all of the work they perform. 29 U.S.C. §§ 206, 207.  The Supreme Court has long defined the term "work" to include "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944).  In *Mt. Clemens*, *supra,* the Supreme Court expansively defined "the statutory workweek" to "include[ ] all time during which an employee is necessarily required to be on the employer's premises, on

duty or at a prescribed workplace," including time necessarily spent by employees walking from time clocks near the factory entrance gate to their workstations.  328 U.S. at 691-92.

In response to *Mt. Clemens*, Congress passed the Portal-to-Portal Act in order to shield employers from unexpected liability.  *Gorman v. Consolidated Edison Corp.*, 488 F.3d 586, 590 (2d Cir. 2007).  Under the Portal-to-Portal Act, employers are not required to compensate for: (1) "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform," or (2) "activities which are preliminary to or postliminary to said principal activity or activities."  29 U.S.C. § 254(a).

Two years after the Portal-to-Portal Act, Congress again amended the FLSA adding the provision currently codified at 29 U.S.C. §203(o), which provides that when determining hours worked, "there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time . . . by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee."

Nearly a decade after Congress enacted the Portal-to-Portal Act, the Supreme Court considered whether workers in a battery plant had a statutory right to compensation for the "time incident to changing clothes at the beginning of the shift and showering at the end, where they must make extensive use of dangerously caustic and toxic materials, and are compelled by circumstances, including vital considerations of health and hygiene, to change clothes and to shower in facilities which state law requires their employers to provide. . ."  *Steiner v. Mitchell*, 350 U.S. 247, 248 (1956).  After finding that preliminary and postliminary "changing clothes and showering under normal conditions" were indisputably non-compensable, *id*. at 249, the Court distinguished the donning and doffing of specialized gear at issue due to the plant employees'

17

constant exposure to health-threatening materials, *id.* at 256, and endorsed the Court of Appeals'

conclusion that these activities were compensable under the FLSA.  In reaching this result, the

Court held that "the term 'principal activity or activities' [in the Portal-to-Portal Act] embraces

all activities which are an 'integral and indispensable part of the principal activities'" for which

covered workmen are employed . . ." *Id.* at 256 (emphasis added).

Following *Steiner,* the Department of Labor ("DOL") issued guidelines discussing when

changing clothes is an integral and indispensable part of an employee's principal activity and

therefore compensable under the Portal-to-Portal Act.  The DOL stated that:

> [i]f an employee in a chemical plant, for example, cannot perform
> his principal activities without putting on certain clothes, *changing
> clothes on the employer's premises at the beginning and end of the
> workday* would be an integral part of the employee's principal
> activity. On the other hand, if changing clothes is merely a
> convenience to the employee and not directly related to his
> principal activities, it would be considered as a "preliminary" or
> "postliminary" activity rather than a principal part of the activity.

29 C.F.R. § 790.8(c) (emphasis added).  *See also id.* at n.65 ("Such a situation may exist where

the changing of clothes on the employer's premises is required by law, by rules of the employer,

or by the nature of the work.").

Relying in part on the DOL guidelines, in 2003, the Ninth Circuit held that donning and

doffing protective gear by workers at a meat production plant was integral and indispensable to

the principal work performed because the employees were required to don and doff the gear "*on

the [ ] plant's premises*" and because the donning and doffing was "done for the benefit of [the

employer]."  *Alvarez v. IBP, Inc. (Alvarez I),* 339 F.3d 894, 903 (9th Cir. 2003), *aff'd* 546 U.S.

21 ("*Alvarez II*") (emphasis added).  Consequently, the Court held that, with the exception of *de

minimis* acts of donning and doffing non-unique protective gear, employees' actions of donning,

doffing, and retrieving job-related protective gear before and after work were compensable under the FLSA. *Id.* In arriving at its conclusion, the Court noted that "[t]he Supreme Court's approach to this principal, integral and indispensable duty question is context specific," and "[t]o be integral and indispensable, an activity must be necessary to the principal work performed and done for the benefit of the employer." *Id.* at 902-03 (citations and internal quotations omitted). With respect to the first inquiry, the Court concluded that because the donning and doffing of gear *on the employer's premises* is required, such activity is necessary to the principal work performed. *Id.* at 903 (citing 29 U.S.C. § 790.8(c) n. 65). With respect to the second inquiry, the Court held that the donning and doffing at issue was done for the benefit of the employer because it satisfied the employer's safety requirements and prevented unnecessary workplace injury and contamination. *Id.*[5] *See also Ballaris v. Wacker Siltronic Corp.,* 370 F.3d 901, 911-12 (9th Cir. 2004) (finding that time spent donning and doffing plant uniforms was compensable under the FLSA because "as in *Alvarez,* Wacker 'required' [its] workers to change into and out of their uniforms at the plant, and only at the plant, in the normal course of the employees' jobs.")

In an advisory memorandum regarding *Alvarez*, the DOL reiterated its view that the FLSA does not require compensation where employees don and doff clothing and gear at home:

> [D]onning and doffing of required gear is within the continuous workday only when the employer of the nature of the job mandates that it take place on the employer's premises. It is our longstanding position that if employees have the option and the ability to change into the required gear at home, changing into that

---

[5] The Supreme Court affirmed *Alvarez I*, and held that because employees are paid for a continuous workday, "any walking time that occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity is [compensable.]" *IBP, Inc. v. Alvarez*, 546 U.S. 21, 37 (2005) (*Alvarez II*).

> gear is not a principal activity, even when it takes place at the
> plant.

*U.S. Dep't of Labor, Wage & Hour Adv. Mem.* No. 2006-2, at 3 (May 31, 2006) ("2006 DOL

memorandum").

More recently, in *Bamonte v. City of Mesa,* 598 F.3d 1217, 1225-26 (9th Cir. 2010), the

Ninth Circuit held that police officers' donning and doffing of their uniforms is not compensable

under the FLSA when the police department does not require the donning and doffing to occur at

the workplace.  More specifically, the panel held that in the absence of a "law, rule or regulation

mandating on-premises donning and doffing," 598 F.3d at 1225, the plaintiffs were merely

seeking "that they be compensated because of their *preference* to don and doff at the workplace,"

*id.* at 1226.   In so doing, the panel relied in part on the 2006 DOL memorandum and

distinguished the officers' case from those of the employees in *Steiner, Alvarez,* and *Ballaris*

where serious health and safety concerns required employees to don and doff in special on-site

areas.  *Id.* at 1225-27.  The panel was persuaded that reasons that the officers advanced for why

they preferred to dress on-premises – which are identical to those advanced by the plaintiffs here

– inured to their own benefit, not to the benefit of the police department.  *Id.* at 1226.  The

*Bamonte* Court concluded that the officers' donning and doffing was not integral and

indispensable because "[n]o requirement of law, rule, the employer, or the nature of the work

mandate[d] donning and doffing at the employer's premises, and none of the other factors

articulated in *Alvarez* weigh[ed] in favor of a conclusion of compensability."  *Id.* at 1233.

### 2.  Application to the Present Case

The Court finds that because the plaintiffs have the option to don and doff their uniforms

and gear at home (FPTO § 3 ¶ 332-37) and because the option to change at work benefits the

plaintiffs, not Teaneck (*id.* at ¶ 335), these activities are preliminary and postliminary to the principal activity of police work and therefore are non-compensable under the FLSA.  Moreover, in accordance with Section 203(o) of the FLSA, plaintiffs are foreclosed from seeking compensation for donning and doffing time as such activities were excluded from measured working time under the Agreement.

The facts at play in this case are distinguishable from those found in *Steiner, Alvarez,* and *Ballaris, supra*, where the employees were required to don and doff at the employer's premises. The Teaneck plaintiffs have stipulated that "[t]he donning and doffing of the uniforms and related gear by the plaintiffs are not required by the defendant to be performed at the workplace." (FPTO § 3 ¶ 333.)  In *Steiner* and *Alvarez,* the on-premises donning and doffing mandate was imposed to ensure compliance with the law.  Here, "[t]here is no rule, regulation or other requirement that employees of the Department don or doff their uniform at Teaneck Police Headquarters." (*Id.* ¶ 332.)  Finally, in *Steiner, Alvarez,* and *Ballaris*, the courts determined that the employees' on-premises changing was for the benefit of the employer.  Several of the Teaneck plaintiffs have also conceded that "there is no reason they cannot don . . . their entire uniform at home," and note that "[t]he option to change at work primarily benefits the plaintiffs as it addresses the [officers'] concerns." (*Id.* ¶ 337, 335.)  *See Musticchi v. City of Little Rock, Ark.*, 734 F. Supp. 2d 621, 626 (E.D. Ark. 2010) (distinguishing the holdings in *Steiner* and *Alvarez* and finding that donning and doffing police uniforms and gear was not compensable under the Portal-to-Portal Act); *accord Bamonte,* 598 F.3d at 1222, 1225-26.

Even if work clothes could be considered "integral and indispensable" to plaintiffs' duties, Section 203(o) of the FLSA specifically provides that when determining hours worked, "there shall be excluded any time spent in changing clothes or washing at the beginning or end of

each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee."  29 U.S.C. § 203(o).  Thus, employees covered by a collective bargaining agreement are foreclosed from seeking compensation for donning and doffing if (1) the donning and doffing time was excluded from measured working time by a "custom or practice" under the Agreement; and (2) their donning and doffing involves "clothes." *See Andrako v. U.S. Steel Corp.*, 632 F. Supp. 2d 398, 406 (W.D. Pa. 2009) (citations omitted).

Here, these two elements are met.  It is undisputed that for as long as there has been a collective bargaining agreement between Teaneck and the police unions, there has been no donning and doffing compensation, thus demonstrating a custom or practice of excluding donning and doffing from working time.  (FPTO § 3 ¶¶ 344-48); *See, e.g., Turner v. City of Philadelphia*, 262 F.3d 222, 225 (3d Cir. 2001) (affirming the judgment of the district court "[b]ecause the uncontroverted facts establish[ed] [the officers' and their union's] long-standing acquiescence to a 'custom or practice' of the non-compensability of change time" into police uniforms).  Additionally, the Court finds that the articles plaintiffs don and doff prior to and following their shifts are "clothes" within the meaning of the statute.  While the Third Circuit has not defined "clothes" within the meaning of Section 203(o), district courts within the Circuit have found that protective materials, such as the equipment at issue, fall within the ambit of 203(o).  *See, e.g., Andrako,* 632 F. Supp. 2d at 409-10; *Figas v. Horsehead Corp.*, No. 06-1344, 2008 WL 4170043, at *12 (W.D. Pa. Sept. 3, 2008).

To date, the Third Circuit has not directly addressed the compensability of police officers' on-premises donning and doffing under the FLSA.  However, in accordance with the Portal-to-Portal Act and Section 203(o), and applying the Supreme Court's "context-specific

22

[compensability] inquiry," *Alvarez,* 339 F.3d at 903, the Court is satisfied that the plaintiffs are not entitled to compensation for the time spent donning and doffing their uniforms and gear. Teaneck's motion for summary judgment as to Count III of plaintiffs' complaint is granted.

## V. Conclusion

For the foregoing reasons, plaintiffs' motion for summary judgment (D.E. 32) is denied and summary judgment is granted in favor of Teaneck (D.E. 31).   An appropriate order will follow.


Date:  December 28, 2012                                    /s/ Katharine S. Hayden_____
                                                                          Katharine S. Hayden, U.S.D.J.

23